John Jackson Jr.
33076 Regina Drive
Temecula, CA 92592
(951) 295-9107

Pro Per
In re : Chapter 7

FILED
APR 13 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Jackson Jr., | ) Case No.: 6:09-bk-39920-EC |
| Debtor, | ) **DEBTOR'S ATTACH AMENDMENT TO OPPOSITION TO NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY** |
| vs. | ) |
| U.S. BANK, N.A., | ) Hrg: 4-27-10 |
| Creditor(s) | ) 1:30 |

Dated this 04/08/2010

TO THE HONORABLE MEREDITH JURY UNITED STATES BANKRUPTCY JUDGE, THE

OFFICE OF THE TRUSTEE, THE MOVING PARTY AND OTHER PARTIES IN INTEREST:

Debtor in Possession John Jackson Jr. ("Debtor") hereby presents attached discoveries opposing

objects to the motion for relief from stay filed by U.S. BANK, N.A., as follows:

Debtor has discovered through an agent for Downey Savings Debtor's original promissory note

was sold to an investor. Debtor alleges the following;

1. (Downey Savings) THE ORIGINAL LENDER, exercised its rights and sold my note

    into the secondary market to an investor..

OPPOSITION TO NOTICE OF MOTION FOR RELIEF FROM AUTOMATICE STAY - 1

2. Once my loan was sold in the securitized in the secondary market the note was subsequently securitized.

3. I discovered that once my note was securitized, numerous securities investors own fractional beneficial interest in my note.

4. Debtor alleges that no one investor owns the right to the note in its entirely.

5. Movant is only a loan servicer, not the real party in interest

Therefore, Debtor moves the court to dismiss Movant's request with prejudice.

U.S. BANK, N.A. lacks foundation as there is no admissible evidence that the property was purchased or that the U.S. BANK, N.A. has authorization to act as its agent. SEE EXHIBIT (A @ B ) A CONFESSION SIGNED ON COMPANY LETTER HEAD

## CONCLUSION

There is no evidence that U.S. BANK, N.A. is in possession or has been assigned the underlying promissory note. However, the debtor(s), would be injured if the motion were granted because U.S. BANK, N.A. is seeking relief to proceed with an Unlawful Detainer eviction on our residence. As such, I have standing to oppose this motion. For all of the foregoing reasons, Debtor respectfully requests that this Court deny U.S. BANK, N.A.'s Motion in its entirety.

Respectfully submitted,

*/s/ John Jackson*

John Jackson
Debtor in Possession
Dated 04/08/2010



## DOWNEY SAVINGS®

*The Friendlier, Easier Place to Bank*

November 21, 2008

Angie Reveles
2888 Morningside St.
San Diego, CA 92139-3528

RE: Loan Number 9041659954

This letter is in response to your recent inquiry dated November 18, 2008 regarding the above referenced real estate loan.

As you are already aware, after your loan originated, Downey Savings exercised its rights and sold your note in the secondary market to an investor. Once your loan was sold in the secondary market, it was subsequently securitized. Please be advised that once a note is securitized, numerous securities investors own fractional beneficial interest in the note. Stated differently, there is no one individual that owns the right to the note in its entirety, which is why Downey Savings has been contractually retained by Wells Fargo Bank, the master servicer, to service your loan on behalf of the investor, including responding to borrower requests. At this time Downey Savings does not offer loan modifications on loans that have been sold to this particular investor. Consequently, your request for a loan modification is not granted.

As requested, the contact information for a representative at Wells Fargo Bank, as master servicer on behalf of the investor on your loan, is as follows:

Greg Hausner
Client Services Manager
Wells Fargo Bank, N.A.
Corporate Trust Services
7080 Samuel Morse Drive
Columbia, MD 21046
443.542.6631 (phone)
443.542.6398 (fax)

In regard to your concern with the trustee sale scheduled December 1, 2008, please contact the Foreclosure Department at 1-800-824-6902 extension 6696. Please note that the trustee sale will not be postponed or cancelled, unless you reinstate the default.

If you have any questions or require assistance in the future, you may contact Downey Savings through our Internet website at downeysavings.com, or call our Customer Service department at 1-800-824-6902.

Sincerely,

Tammie Denson
Foreclosure Manager
Loan Servicing Department

downeysavings.com
Downey Savings and Loan Association, F.A.
P.O. Box 6060 • Newport Beach, California 92658-6060 • (949) 854-3100
Express Mail Delivery: 3501 Jamboree Road • Newport Beach, California 92660-2980




PRINT

# Slate

EXPLAINER

## What Is a Mortgage-Backed Security?
The financial instrument that destroyed Bear Stearns.

By Chris Wilson
Posted Monday, March 17, 2008, at 7:09 PM ET



COMING 4/23:
THE NEW BLOOMBERG BUSINESSWEEK
THE BUSINESS MAGAZINE. REINVENTED.
GET IT FREE!
CLICK HERE TO RESERVE YOUR COPY

The implosion of securities firm Bear Stearns over the weekend was a painful blow to an already turbulent market. Bear Stearns, which was founded in 1923 and had survived the Depression and weathered a dozen recessions, was undone in large part by its investments in a financial commodity known as "mortgage-backed securities." What are those, exactly?

Mortgage-backed securities resemble bonds, instruments issued by governments and corporations that promise to pay a fixed amount of interest for a defined period of time. Mortgage-backed securities are created when a company such as Bear Stearns buys a bunch of mortgages from a primary lender—that is, from the company you actually got your mortgage from—and then uses your monthly payments, and those of thousands of others, as the revenue stream to pay investors who have bought chunks of the offering. They allow lenders to sell the mortgages they make, thus replenishing their coffers and allowing them to lend again. For their part, buyers of mortgage-backed securities take security in the knowledge that the value of the bond doesn't just rest on the creditworthiness of one borrower, but on the collective creditworthiness of a group of borrowers.

In addition to creating mortgage-backed securities, Wall Street firms such as Bear Stearns also traded them.

When the housing market is doing well and interest rates are low, investing in a mortgage-backed security is a fairly safe bet. So long as homeowners stay current with their payments, holders of mortgage-backed securities receive a stream of payments. Even those investors who buy lower-quality mortgage-

backed securities, in the hopes of receiving higher interest payments, generally fare well in a bull market. But when the housing market goes south, or if interest rates rise, even the safest of these investments are in serious jeopardy. Rising interest rates reduce the value of securities that pay a fixed rate of interest. When borrowers default on mortgages, the stream of payments available to holders of mortgage-backed securities declines. And when a firm has borrowed heavily to finance the purchase and trading of such securities, it doesn't take much of a fall in value to trigger serious problems.

The nationwide mortgage-default crisis has harshly punished many of the participants in the mortgage-backed-securities market. As subprime lenders failed, Wall Street firms such as Bear Stearns, which underwrote the issuance of such securities, saw their revenues fall. Hedge funds that traded mortgage-backed securities using lots of borrowed money suffered heavy losses as the value of the bonds fell. Last summer, two Bear Stearns hedge funds that specialized in mortgage-backed securities melted down, giving the firm a black eye. In recent months, as the market for mortgage-backed securities—and for financial instruments based on them—has seized up, large investment banks and hedge funds have been forced to write down the value of the mortgage-backed securities on their books, taking huge charges against earnings and scaring off other market participants from trading with them. Bad bets on mortgage-backed securities have contributed to a crisis in confidence at many of Wall Street's largest players, including Bear Stearns. Last week, Bear fell victim to a run on the bank, which had its origins in the firm's concentration in the mortgage-backed securities market. Rather than file for bankruptcy, Bear Stearns accepted a takeover bid from JPMorgan Chase for $2 a share. (A year ago, it traded at $150.) Analysts warn that other firms that invested so heavily in mortgage-backed securities may not be far behind.

*Got a question about today's news? Ask the Explainer.*

*Chris Wilson is an associate editor at **Slate** in Washington, D.C. Follow him on Twitter.*

**Article URL:** http://www.slate.com/id/2186801/

---

Copyright 2010 Washingtonpost.Newsweek Interactive Co. LLC